UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

XUE BAO CHEN,

    Petitioner,

vs.

WARDEN NEVEN, et al.,

    Respondents.

Case No. 2:12-cv-02162-JAD-NJK

**Order Denying Petition
and Closing Case**

    Petitioner Xue Bao Chen brings this habeas action to challenge his 2010 battery-with-a-deadly-weapon convictions in Nevada state court. Having considered Chen's first amended petition for writ of habeas corpus (#71), respondents' answer (#77), and petitioner's reply (#87), the court finds that petitioner is not entitled to relief, denies the petition, and closes this case.

**Background**

    After a jury trial in state district court, petitioner was convicted of one count of battery with a deadly weapon on Gui Na Wang ("Anna") and one count of battery with a deadly weapon on Rong Ivy Hu ("Ivy"). Ex. 102, 103, 122 (#25). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 136 (#27). Petitioner then filed a post-conviction habeas corpus petition in state district court. Resp. Ex.[1] 148 (#78). The state district court appointed counsel, who filed a supplement and an amended supplement. Pet. Ex. 147, 148 (#72); Resp. Ex. 156, 158 (#78). It also held an evidentiary hearing on the petition. Pet. Ex. 150 (#72); Resp. Ex. 173 (#79). The state district court then denied the petition. Pet. Ex. 151 (#72); Resp. Ex. 176 (#79). Petitioner appealed, and the Nevada Supreme Court affirmed. Pet. Ex. 156 (#72); Resp. Ex. 195 (#79).

    Petitioner commenced this action while the state post-conviction habeas corpus petition was pending. After service of the original, proper-person petition upon respondents, petitioner moved

---

[1] Citations to Petitioner's Exhibits are abbreviated "Pet. Ex.," and citations to Respondents' Exhibits are abbreviated "Resp. Ex."

for appointment of counsel. A few days later, respondents moved to dismiss. The court granted petitioner's motion for appointment of counsel and denied the motion to dismiss as moot. Order (#45). The first amended petition and the answer followed.[2]

## Discussion

### A. The law of habeas corpus

The federal habeas statute, 28 U.S.C. § 2254(d), vests the federal court with the authority to grant a writ of habeas corpus in limited circumstances:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless" the petitioner demonstrates that the state court's decision "was contrary to federal law then clearly established in the holdings of [the Supreme] Court," "involved an unreasonable application of that law, or "was based on an unreasonable determination of the facts in light of the record before the state court." *Richter*, 562 U.S. at 100 (internal citations omitted). In short, the state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

---

[2] Respondents filed exhibits 1–146 in support of their motion to dismiss. Petitioner and respondents each filed exhibits in support of the first amended petition and the answer, respectively. But petitioner started his numbering with exhibit 147, and respondents continued their numbering with exhibit 147. Where possible, the court will cite to both sets of exhibits. The court recommends that the Attorney General's office and the Federal Public Defender coordinate in future cases to ensure a cleaner system for exhibit numbering.

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citation omitted). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The Supreme Court described the federal court's habeas task in *Harrington v. Richter*:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Richter*, 562 U.S. at 102. I now consider petitioner's claims in light of these principles.

### B.     Analysis of petitioner's claims

#### 1.     Ground 1

Ground 1 is a claim that the evidence was insufficient for the jury to find that petitioner used a deadly weapon in the commission of the two counts of battery; petitioner conceded at trial that he did commit the batteries. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

The Nevada Supreme Court summarized the trial evidence against Chen this way:

> The jury heard testimony from three eyewitnesses that Chen was positioned over the first victim, holding a wooden-handled knife with a serrated blade in his right hand, and moving it in an up-and-down motion. One witness testified that Chen said, "I'm going to kill you. I'm going to stab you to death." And two medical doctors testified that the injury to the victim's neck was consistent with a stab wound. The jury also heard testimony that the second victim did not have an injury to her arm when she entered the

> bedroom, did not hit anything while in the bedroom or bathroom, made physical contact with Chen while trying to separate him from the first victim, and had an injury on her arm when she left the bedroom. While the second victim was in close proximity to Chen, he was waving the knife around in a side-to-side motion and resisting attempts to take the knife from his hand. One of the medical doctors testified that the second victim's injury was consistent with a knife wound and another testified that it could have been caused by a knife. From this evidence, a rational juror could reasonably infer that the victims' injuries were caused by a knife. [Footnote 1: Chen does not dispute that a knife constitutes a deadly weapon.] It is for the jury to determine the weight and credibility to give to conflicting testimony, and the jury's verdict will not be disturbed on appeal, where, as here, substantial evidence supports the verdict.

Ex. 136 at 1-2 (citations omitted) (#27). Petitioner summarizes the evidence differently, which highlights the problem with his claim: if evidence is conflicting, then the courts do not decide whom to believe. It is up to the jury to resolve those conflicts. On review for sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution. The Nevada Supreme Court's summary of the evidence shows that reasonable jurors could have found that petitioner used a deadly weapon when committing the batteries. The court finds that ground 1 is without merit. But because reasonable jurists might find this conclusion debatable, the court will issue a certificate of appealability for this ground.

   2.   *Ground 2*

Ground 2 contains two claims of ineffective assistance of trial counsel. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness" and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In *Strickland*, the Court declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. *Strickland*, 466 U.S. at 688. The court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance," reasoning that "[a]ny such set of rules would

interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 688–89.

Review of an attorney's performance must be "highly deferential," and the court must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se; it guarantees a fair proceeding with a reliable outcome. *See id.* at 691–92; *see also Jennings v. Woodford*, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. *Strickland*, 466 U.S. at 691-92. This requires a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When considering a habeas petition, the federal court must ask whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard:.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).

First, petitioner argues that he had a viable defense strategy—to admit the battery but deny the use of a knife, thus making the crime a misdemeanor—but trial counsel undercut that strategy by conceding in opening statement that petitioner possessed a knife. In the prosecution's opening

statement, the prosecutor stated that witnesses entered a bathroom and saw petitioner swinging a knife repeatedly over Anna. Ex. 91 at 111–12 (#24). In opening statement, defense counsel told the jury that they would hear testimony from witnesses who claim they saw a knife, but the injuries sustained by Anna and Ivy were minor and caused instead by fingernails and furniture. *Id.* at 116–19 (#24). She used the same strategy in her closing argument: she argued that the witnesses saw the knife but that nobody testified that they saw the knife touch Anna, Anna did not remember being cut or stabbed with a knife, and neither Anna's injuries nor Ivy's injuries were consistent with a knife held by petitioner. Ex. 99 at 12–-45 (#25). On this issue, the Nevada Supreme Court held:

> At the evidentiary hearing, Chen's trial counsel testified that she acknowledged that Chen had a knife during the attack, but argued that the knife was not actually used to cause the injuries sustained by the victims, because she believed that the witnesses would testify that they observed a knife and it would have been too hard to discredit all of the witnesses. We agree with the district court's determination that this tactical decision was not objectively unreasonable and we affirm the denial of this claim.

Pet. Ex. 156 at 2 (#72); Resp. Ex. 195 at 2 (#79).

The Nevada Supreme Court's ruling was an accurate summary of counsel's testimony at the evidentiary hearing. *See* Pet. Ex. 150 at 34-35 (#72); Resp. Ex. 173 at 34-35 (#79). Petitioner argues now that it would have been better for trial counsel to have argued that all three witnesses were in the heat of passion and mistaken about seeing a knife. That was a choice of strategies for counsel to make. The court cannot say that the strategy that counsel used was so unreasonable that counsel instead should have use the heat-of-passion strategy that all three people made the exact same mistake in memory under the stress of the moment. More importantly, this court cannot say that the Nevada Supreme Court's determination that counsel's decision was not objectively unreasonable was itself objectively unreasonable. This part of ground 2 is without merit.

Petitioner next argues that counsel should have filed a motion in limine to exclude evidence of his poor character (such as his gambling problem, his hot temper, and his requests for money from Anna). Petitioner further argues that, when surprised by this evidence, counsel objected on the basis that the prosecution was trying to admit evidence of petitioner's prior bad acts, leading the jury to believe that petitioner had previously committed crimes.

In the opening statement, the prosecutor noted that Anna had bought a restaurant from petitioner on a verbal contract. The prosecutor then started describing how petitioner would then return to Anna, saying that she owed him more money because he did not sell the alcohol, the tables, and the refrigerator with the restaurant. When he started on another incident, defense counsel stated:

> MS. FLYGARE: And, your Honor, we're going to object to what he's going into. I think that these are prior bad acts and I don't even know if they're going to come in a trial. This not an argument at this point in time, it's just stories. So we're objecting on that basis.

Ex. 91 at 108–09 (#24). At the lunch break, the court stated that it would hold a hearing on five potentially questionable remarks: (1) that petitioner had embarrassed Anna in the past, (2) that he was making demands for money, (3) that he had a gambling problem and had lost his money, (4) that he was playing on Anna's feelings and their past relationship to get money, and (5) that he was extorting Anna. *Id.* at 140–41, 143–44 (#24). The next morning, the court conducted the hearing. Trial counsel noted that everybody seemed to be confusing themselves by referring to the evidence as "prior bad act" evidence—meaning evidence of criminal conduct not being charged, and governed by Nev. Rev. Stat. § 48.045(2). She noted that the evidence at issue was more of petitioner's character and governed by Nev. Rev. Stat. § 48.045(1). Ex. 93 at 12 (#24). Then, after more argument and testimony by Anna, the parties started arguing whether the evidence was relevant. *Id.* at 41 (#24). The trial court made its ruling, allowing some evidence and excluding other evidence, and the trial proceeded.

On direct appeal, the Nevada Supreme Court sorted out the confusion over what type of evidence this was:

> Chen also contends that the district court erred by admitting evidence that he had a gambling problem, [Footnote 2: The evidence actually adduced at trial was that Chen started "gambling a lot."] became hot-tempered, and often needed money and frequently tried to get it from one of the victims. While Chen and the State argue the admissibility of this evidence under a prior bad act analysis, the challenged evidence is not prior bad act evidence because it does not relate to acts [that] implicate prior bad acts or collateral offenses for which Chen could have been charged. . . . Therefore, the proper inquiry is whether the challenged evidence was relevant, NRS 48.015, 48.025(2), and whether its probative value was substantially outweighed by the danger of unfair prejudice, NRS 48.035(1).

-7-

> Chen objected to the admission of the evidence regarding his gambling and need for money. The district court determined that this evidence was relevant to establish Chen's motive and its probative value was not substantially outweighed by the danger of unfair prejudice. We conclude that Chen failed to demonstrate that the district court's determination constituted an abuse of discretion. . . . Chen did not object to the testimony regarding his hot temper and we conclude that he has failed to demonstrate plain error warranting relief.

Ex. 136 at 2-3 (citations omitted) (#27). Later, in the state habeas corpus proceedings, on the issue of counsel's objection, the Nevada Supreme Court held:

> Third, Chen contends that the district court erred by denying his claim that his counsel was ineffective for failing to file pretrial motions regarding the admissibility of prior bad acts. Chen argues that had counsel obtained a pretrial determination regarding what evidence would be admissible, counsel would not have had to object during the prosecution's opening statement and the jury would not have heard the words "prior bad acts." The district court determined that, because this court held on direct appeal that the character evidence was not prior bad act evidence, the issue was resolved by the law of the case and counsel's objection to the character evidence was not objectively unreasonable. This determination failed to address the merit of Chen's claim. Nevertheless, Chen failed to demonstrate that counsel was deficient. Because the statements counsel objected to did not actually reference evidence of prior bad acts, Chen failed to demonstrate that the filing of a pretrial motion regarding the admissibility of prior bad act evidence would have prevented counsel's objection. Therefore, we affirm the denial of this claim.

Pet. Ex. 156 at 2-3 (#72); Resp. Ex. 195 at 2-3 (#79) (citation omitted).

      Petitioner's contentions that counsel should have anticipated the prosecution's attempt to admit this evidence, and that counsel should have filed a motion in limine, are largely moot. The trial court did hold a hearing on the admissibility of the evidence. The Nevada Supreme Court reasonably held that petitioner did not demonstrate that counsel would not have objected at trial if counsel had filed a pre-trial motion with a pre-trial hearing. In all likelihood, counsel still would have objected at trial to the admission of this evidence to preserve the issue for appellate review.

      The issue boils down to whether counsel's use of the phrase "prior bad acts" in her objection was ineffective assistance of counsel. The Nevada Supreme Court reasonably could have concluded that petitioner suffered no prejudice from hearing the phrase. Lawyers in criminal and post-conviction practice in Nevada might know that "prior bad acts" refers to uncharged criminal conduct, but the phrase itself is imprecise; not everything that is "bad" is criminal. Immediately before hearing that phrase, the jurors heard about how petitioner would demand more money from

Anna after he sold the restaurant to her. If anything, the jurors would have thought that "prior bad acts" referred to petitioner's continued, perhaps unsavory, efforts to alter the deal after it had closed and not to some other criminal act for which he was not on trial. The court thus finds this part of ground 2 without merit.

Because reasonable jurists might find the court's conclusions on ground 2 to be debatable, the court will issue a certificate of appealability for this ground, too.

### Conclusion

IT IS THEREFORE ORDERED that the first amended petition **(#71) is DENIED**. The clerk of the court is directed to **enter judgment accordingly and close this case.**

IT IS FURTHER ORDERED that **a certificate of appealability is GRANTED** on all grounds.

DATED: September 25, 2015

JENNIFER A. DORSEY
United States District Judge